## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

                                       **Chapter 7**

**James Anthony Kroger,**                      **Bankruptcy No. 22-30922**

           **Debtor.**

---

**Mary R. Jensen, Acting United States Trustee,**

               **Plaintiff,**

v.                                    **Adv. No. 22-03043**

**James Anthony Kroger,**

              **Defendant.**

---

## AMENDED COMPLAINT

---

Plaintiff, Mary R. Jensen, Acting United States Trustee ("UST"), for her amended complaint against James Anthony Kroger, the defendant, states and alleges as follows:

1.      Mary R. Jensen is the Acting United States Trustee for Region 12, which covers the Federal Judicial Districts of Iowa (Northern & Southern Districts), Minnesota, North Dakota, and South Dakota.   The plaintiff has standing to commence this adversary proceeding pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 727(c)(1).

2.      Mr. Kroger is a resident of the State of Minnesota.   He filed a voluntary

petition for relief under chapter 7 of the Bankruptcy Code on June 8, 2022.   Mr.

Kroger also filed bankruptcy schedules, a statement of financial affairs, and various

other documents on June 8, 2022.   The bankruptcy case is captioned *In re James*

*Anthony Kroger*, case number 22-30922, Bankr. D. Minn., Third Division, and it

remains open.   Michael S. Dietz was appointed as the chapter 7 trustee.

3.      This complaint is filed under Fed. R. Bankr. P. 7001(4) and seeks an order

denying Mr. Kroger's bankruptcy discharge under 11 U.S.C. § 727(a)(2)(A), (a)(2)(B),

(a)(3), (a)(4)(A), and (a)(5).

4.      This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157 and 1334.   This proceeding is a core proceeding.

5.      The plaintiff consents to entry of final judgment by the bankruptcy court in

this matter.

## <u>Entities and Pre-Petition Litigation</u>

6.      The following allegations are made upon information and belief.   To the

extent any allegations are inconsistent with one another, they are pled in the

alternative.

7.      Mr. Kroger has an ownership interest in multiple business entities:   Intelligent

Technology, Inc. ("Intelligent Technology"), Valentine Capital Asset Management,

LLC, Valentine Capital LP, Caggo, LLC, Kroger Dynasty, LLC, and Kroger Dynasty

Holdings, LLC.   Intelligent Technology, Inc. also owns a 49% interest in Lone Star

Municipal Finance Company, LLC ("Lone Star") and is the "Chief Executive

Manager" of Lone Star.   Mr. Kroger is the sole owner of Intelligent Technology.

8.     Nathan Dornbrook is a former business associate and creditor of Mr. Kroger.

9.     Mr. Dornbrook owns a 51% interest in Lone Star.

10.     Mr. Kroger drafted the operating agreement for Lone Star ("Lone Star

Operating Agreement").

11.     The Lone Star Operating Agreement provides that Lone Star "may make loans

to Members and Shareholders of Members; however, any such loans must be bona

fide, arms-length loans that include, but are not limited to, the following terms: a

maximum annual loan amount of $200,000 USD, a duly executed note secured and

collateralized exclusively by the stock of the Member or Shareholder of the Member, a

rate of interest that is 150% of the long-term Applicable Federal Rate (AFR) when the

loan is issued and is calculated and paid or accrued annually, and the maximum term

of the loan shall be 10 years."

12.     Mr. Dornbrook provided all or nearly all of the capital for Lone Star.   On

November 6, 2019, Mr. Dornbrook wired $640,750 to Lone Star.   On December 19,

2019, Mr. Dornbrook wired another $200,000 into Lone Star's bank account.

13.     Beginning on November 7, 2019, and continuing through January 31, 2022, Mr.

3

Kroger transferred at least $499,606.52 from Lone Star to himself or Intelligent Technology.

14.    Between December 3, 2019 and January 7, 2020, Mr. Kroger also used Lone Star to purchase three foreclosed properties located in Texas.    In January of 2021, Mr. Kroger transferred all three properties to Intelligent Technology and then to Kroger Dynasty Holdings, LLC.    One of the three properties was ultimately sold again in May of 2021, and Mr. Kroger allocated the net sales proceeds to himself. Mr. Kroger also allocated another $169,735.62 from Lone Star to Intelligent Technology.    Mr. Kroger used the funds in the Intelligent Technology bank account for his own personal purposes.

15.    On October 2, 2020, Mr. Kroger and Mr. Dornbrook signed an amendment to the Lone Star Operating Agreement.    The amendment increases the "maximum annual loan amount from $200,000 USD to $250,000 USD", effective as of the date of the amendment.

16.    Mr. Kroger claims that any funds that he or Intelligent Technology took from Lone Star were loans authorized by the Lone Star Operating Agreement.    Mr. Dornbrook, however, did not authorize any of Mr. Kroger's use of any of the funds transferred to Mr. Kroger or Intelligent Technology aside from Mr. Kroger's reasonable living expenses.    Mr. Dornbrook understood that any loan proceeds were

to be taken as an advance against annual distributions made by Lone Star to Mr. Kroger.

17.     On July 14, 2021, Mr. Dornbrook commenced a lawsuit against Mr. Kroger, Intelligent Technology, Inc., and Kroger Dynasty Holdings, Inc.

18.     In August of 2021, Mr. Kroger transferred the title to the two remaining Texas properties from Kroger Dynasty Holdings, LLC to Intelligent Technology, and back to Lone Star.

## Falsified Documents

19.     On June 1, 2022, Mr. Kroger purportedly issued a promissory note to Lone Star in which he recites $450,000.00 in loans incurred by him between November 7, 2019 and February 13, 2020.   The promissory note also recites an additional $228.18 in loans incurred on January 31, 2022.   The promissory note further recites that Mr. Kroger paid $34,515.16 in total loan payments between February 11, 2020 and January 14, 2022.   In reality, the "loan payment" transactions proceeded as follows:

    a.     February 11, 2020:   Arnold Abrahamson deposited $20,000 directly into Lone Star's Wells Fargo bank account.   Mr. Kroger falsely characterized this deposit as a "loan payment."

    b.     June 1, 2020:   Mr. Kroger deposited a $11,115.16 check written by Texas Tax Sales Resource Group to Loan Star.   Mr. Kroger falsely characterized this

deposit as a "loan payment."

c.    December 4, 2020:   Mr. Kroger deposited $1,550 in rent derived from property owned by Lone Star.   Mr. Kroger falsely characterized this deposit as a "loan payment."

d.    January 5, 2021:   Mr. Kroger deposited $1,650 in rent derived from property owned by Lone Star.   Mr. Kroger falsely characterized this deposit as a "loan payment."

e.    July 13, 2021:   Mr. Kroger transferred $100 from his personal Wells Fargo bank account to Lone Star.   The funds were mostly consumed by bank fees over the next six months.

f.    January 14, 2022:   Mr. Kroger transferred $200 from his personal Wells Fargo bank account to Lone Star.   But on January 31, 2022, Mr. Kroger subsequently transferred $228.18.   Mr. Kroger falsely characterized the January 14, 2022 transfer as a "loan payment."

20.    On June 1, 2022, Mr. Kroger purportedly issued a promissory note to Kroger Dynasty Holdings, Inc. in which he recites $23,978.15 in loans incurred by him on May 28, 2021.

21.    On June 1, 2022, Mr. Kroger, acting on behalf of Intelligent Technology, purportedly issued a promissory note to Lone Star in which he recites $206,905.62 in

loans incurred by Intelligent Technology between February 10, 2020 and January 8, 2021.   The promissory note further recites that Intelligent Technology paid $12,600 in total loan payments between October 2, 2020 and January 14, 2022.   In reality, Mr. Kroger transferred the funds that he characterized as "loan payments" to Lone Star and then immediately transferred the funds to Intelligent Technology, and subsequently to himself.

22.     On June 1, 2022, Mr. Kroger purportedly issued a promissory note to Intelligent Technology in which he recites $171,150.00 in loans incurred by him between March 25, 2020 and November 18, 2021.   The promissory note further recites that Mr. Kroger paid $3,700.00 in total loan payments between March 18, 2020 and January 14, 2022.   In reality, Mr. Kroger transferred the funds that he characterized as "loan payments" to Lone Star and then immediately transferred the funds to Intelligent Technology, and subsequently to himself.

23.     None of the promissory notes purported to be secured or collateralized.   None of the promissory notes contain any repayment terms or references to any rate of interest.   All of the promissory notes were purportedly drafted well after Mr. Kroger "borrowed" the funds in question.

24.     Mr. Kroger has never provided copies of the purported promissory notes to Mr. Dornbrook, his counsel, or Lone Star.

7

## Purchase and Sale of Precious Metals

25.     Mr. Kroger's schedule B does not list any precious metals.

26.     Mr. Kroger purchased $198,355.39 of precious metals between November 13,

2019 and August 23, 2021.   In addition, Mr. Kroger appears to have purchased eight

additional American Gold Buffalo coins on an unspecified date, with an approximate

value of $2,000.00 each.   It appears that Mr. Kroger used his Wells Fargo bank

account, his American Express credit card, a Wells Fargo Visa credit card, and a

PayPal account to make the purchases.

27.     Mr. Kroger's statement of financial affairs indicates that he had virtually no

source of income in 2020, 2021, or 2022.   Thus, it appears that some or all of the

funds that Mr. Kroger used to purchase precious metals are traceable to the funds that

he "borrowed" from Lone Star, Intelligent Technology, and Kroger Dynasty

Holdings, Inc.

28.     The UST and Mr. Dietz have both requested an explanation for and

documentation of the disposition of the precious metals.   Mr. Kroger has represented

that he sold all of the precious metals before his bankruptcy petition was filed and

that he used the sales proceeds for living expenses and gambling in Las Vegas.

29.     Between December 15, 2020 and August 26, 2021, Mr. Kroger sold precious

metals totaling $186,225.00.   With the exceptions noted below, Mr. Kroger deposited

the sales proceeds into his Wells Fargo bank account.

30.    On July 22, 2021, Mr. Kroger sold precious metals for $13,000.00 to Midwest Gold/Silver in Sioux Falls, South Dakota.   It is unknown where Mr. Kroger deposited the funds.

31.    On August 26, 2021, Mr. Kroger sold precious metals for $70,500.00 to Coins & Collectables SD in Sioux Falls, South Dakota.   It is unknown where Mr. Kroger deposited the funds.

32.    Mr. Kroger has not provided adequate records to document the disposition of all of the precious metals.

### Undisclosed Financial Accounts

33.    On schedule A/B, Mr. Kroger disclosed a single Minnwest Bank checking account.   No other financial accounts were disclosed on his bankruptcy schedules.

34.    On the statement of financial affairs, Mr. Kroger represented that he closed a First Independent Bank checking account and a Wells Fargo checking account within one year prior to the filing of his bankruptcy petition.

35.    Mr. Kroger maintained an account at SunTrust Bank until at least January 31, 2022.

36.    Mr. Kroger maintained an account at HSBC until at least January 24, 2022.

37.    Mr. Kroger maintained an account at TD Ameritrade until at least December

31, 2021.

38.    Mr. Kroger maintained an account at USAA until at least January 6, 2022.

39.    Mr. Kroger also used a PayPal account until at least August 23, 2021.

40.    The UST requested copies of all financial account statements from May of 2020 through July of 2022.   To date, Mr. Kroger has not produced all of the requested documents.

## Financial Transactions and Requests for Documentation

41.    Mr. Kroger made payments to American Express totaling approximately $343,000 between May 7, 2020 and January 12, 2022.   In addition, Mr. Kroger used his American Express credit card to purchase precious metals on at least one occasion in the two years prior to the date of his bankruptcy petition.

42.    Mr. Kroger's schedule A/B shows personal property with a total value of only $4,925.00.   Mr. Dietz and the UST have both requested that Mr. Kroger produce two years' worth of American Express statements.   To date, Mr. Kroger has failed to provide any of the requested documents.

43.    Mr. Dietz and the UST have both requested that Mr. Kroger produce two years' worth of TD Ameritrade account statements.   As noted above, the TD Ameritrade account was not disclosed in Mr. Kroger's bankruptcy schedules or statement of financial affairs.   To date, Mr. Kroger has failed to provide all of the

requested documents.

44.     Mr. Kroger withdrew $156,650.81 in cash from his Wells Fargo bank account between May 12, 2020 and December 15, 2021.   Mr. Dietz and the UST have requested an accounting of the use of cash.   To date, Mr. Kroger has failed to provide all of the requested documents.

45.     Mr. Kroger owned at least four insurance policies that appear to be life insurance policies.   Mr. Kroger appears to have taken multiple loans against some or all of the insurance policies.   Mr. Kroger did not disclose any life insurance policies on his bankruptcy schedules.   Mr. Kroger claims that he transferred the ownership of the policies to his mother, Phyllis Kroger, before his bankruptcy petition was filed, but he has not specified when he transferred the policies or provided any documentation of the transfers.   Mr. Dietz and the UST have requested documentation of two years' worth of activity connected with any life insurance policies.   To date, Mr. Kroger has failed to provide all of the requested documents.

46.     Mr. Kroger stated on his statement of financial affairs that he had $250,000 of gambling losses in Las Vegas in the year prior to the date of his bankruptcy petition. The chapter 7 trustee and the UST have requested documentation of these losses. To date, Mr. Kroger has failed to provide any of the requested documents.

47.     On May 4, 2020, Mr. Kroger received a Paycheck Protection Program ("PPP")

11

loan of $20,800.00.   On May 20, 2020, Mr. Kroger received a second PPP loan of

$20,832.00.   On February 10, 2021, Mr. Kroger received a third PPP loan of

$20,833.00.   All of the proceeds were deposited into Mr. Kroger's Wells Fargo bank

account.

48.     The UST has requested from Mr. Kroger documentation of the use of the PPP

loan proceeds and copies of the PPP loan applications.   To date, Mr. Kroger has not

provided adequate documentation to account for the disposition of the PPP loan

proceeds and he has not provided one of the PPP loan applications.

49.     The UST has requested various additional financial documents from Mr.

Kroger.   To date, Mr. Kroger has failed to provide all of the requested documents.

## Sham Purchases and Leases

50.     On May 31, 2014, Mr. Kroger purported to enter into a lease agreement with

Phyllis Kroger for the rental of Mr. Kroger's homestead ("Homestead").   Phyllis

Kroger purportedly owns the Homestead, which is located in Cottonwood,

Minnesota.   Mr. Kroger is the only person who resides at the Homestead.   The lease

is a month-to-month agreement, and it calls for $0 per month in rent.   The lease

stipulates that the Homestead is furnished by Phyllis Kroger, and it requires Mr.

Kroger to "pay for all maintenance, upkeep, repairs, replacements, improvements,

alterations, damages, security systems, communications, insurance, and taxes relating

to the Premises, Furnishings, and Appliances." Mr. Kroger does not actually pay the property taxes or the homeowner's insurance. The lease remained in effect when Mr. Kroger filed his bankruptcy petition.

51.    On June 1, 2014, Mr. Kroger purported to enter into a lease agreement with Phyllis Kroger for the use of various tools, equipment, and machinery ("Personal Property") located at the Homestead. The lease is a month-to-month agreement, it calls for $0 per month in rent, and it purportedly applies to all after-acquired Personal Property. Between May 6, 2020 and December 15, 2020, Mr. Kroger purchased Personal Property for a total of $53,801.58. Mr. Kroger claims that he entered into separate unsecured loan agreements with Phyllis Kroger in connection with the purchases of each item of Personal Property. Each of the purported loans have a term of five years with 3% annual interest, with payments to be made "at the discretion of Phyllis Kroger." Mr. Kroger purports to have provided notice of termination of the lease to Phyllis Kroger on March 21, 2022, effective June 1, 2022. The Personal Property remains at the Homestead.

52.    Mr. Kroger claims to have purchased a 1997 Lincoln Town Car ("Town Car") for $13,703.48 on August 15, 2019. The Town Car was initially titled in the name of Phyllis Kroger. Mr. Kroger claims that he entered into an unsecured loan agreement with Phyllis Kroger in connection with the purchase of the Town Car. The loan has

a term of five years with 3% annual interest, with payments to be made "at the

discretion of Phyllis Kroger."   On September 1, 2019, Mr. Kroger purportedly

entered into a lease agreement with Phyllis Kroger for the use of the Town Car.   The

lease is a month-to-month agreement, and it calls for $0 per month in rent.   On or

about April 8, 2022, the title for the Town Car was changed from Phyllis Kroger to

Phyllis Kroger TOD The Vallers View Irrevocable Trust ("Vallers View Trust").   The

Vallers View Trust was established on February 24, 2022, and Mr. Kroger is the

trustee and a beneficiary of the Vallers View Trust.   Mr. Kroger purports to have

provided notice of termination of the lease to Phyllis Kroger on April 22, 2022,

effective June 1, 2022.   The Town Car remains at Mr. Kroger's homestead.

53.    Mr. Kroger claims to have purchased a 1984 Cadillac Seville ("Seville") for

$3,500.00 on September 4, 2019.   The Seville was initially titled in the name of Phyllis

Kroger.   Mr. Kroger claims that he entered into an unsecured loan agreement with

Phyllis Kroger in connection with the purchase of the Seville.   The loan has a term of

five years with 3% annual interest, with payments to be made "at the discretion of

Phyllis Kroger."   On September 7, 2019, Mr. Kroger purportedly entered into a lease

agreement with Phyllis Kroger for the use of the Seville.   The lease is a month-to-

month agreement, and it calls for $0 per month in rent.   On or about April 8, 2022,

the title for the Seville was changed from Phyllis Kroger to Phyllis Kroger TOD the

Vallers View Trust.    Mr. Kroger purports to have provided notice of termination of the lease to Phyllis Kroger on April 22, 2022, effective June 1, 2022.    The Seville remains at Mr. Kroger's homestead.

54.    Mr. Kroger claims to have purchased a 2019 Chevrolet Colorado ("Colorado") for $34,926.10 on January 2, 2020.    The Colorado was titled in the name of Phyllis Kroger.    Mr. Kroger claims that he entered into an unsecured loan agreement with Phyllis Kroger in connection with the purchase of the Colorado.    The loan has a term of five years with 3% annual interest, with payments to be made "at the discretion of Phyllis Kroger."    On March 22, 2022, the title for the Colorado was changed from Phyllis Kroger to Phyllis Kroger TOD the Vallers View Trust.

55.    Mr. Kroger claims to have purchased a 1996 Cadillac Fleetwood ("Fleetwood") for $11,470.00 on April 1, 2021.    The Fleetwood was initially titled in the name of Phyllis Kroger.    Mr. Kroger claims that he entered into an unsecured loan agreement with Phyllis Kroger in connection with the purchase of the Fleetwood.    The loan has a term of five years with 3% annual interest, with payments to be made "at the discretion of Phyllis Kroger."    On April 24, 2021, Mr. Kroger purportedly entered into a lease agreement with Phyllis Kroger for the use of the Fleetwood.    The lease is a month-to-month agreement, and it calls for $0 per month in rent.    On or about April 8, 2022, the title for the Fleetwood was changed from Phyllis Kroger to Phyllis

Kroger and the Vallers View Trust.   Mr. Kroger purports to have provided notice of termination of the lease to Phyllis Kroger on April 22, 2022, effective June 1, 2022. The Fleetwood remains at Mr. Kroger's homestead.

56.    The Town Car, the Seville, the Colorado, the Fleetwood, a 2013 Ram 1500, a 2019 HH 6 trailer, and a 2020 Arising trailer are all insured by separate State Farm household insurance policies issued jointly to Mr. Kroger and Phyllis Kroger.   Mr. Kroger also paid to renew the vehicle registration for various vehicles, and he paid for repairs to various vehicles.   Mr. Kroger has an equitable interest in each of the vehicles.

57.    On October 27, 2021, Phyllis Kroger wrote a check to Mr. Kroger for $122,858.05 to purportedly repay the various loans described above.   Mr. Kroger testified at his meeting of creditors that he does not remember what he spent the money on.

### False Statements on Bankruptcy Petition, Schedules, and Statement of Financial Affairs

58.    On his bankruptcy petition, Mr. Kroger falsely stated that he did not rent his residence.

59.    On schedule A/B, Mr. Kroger failed to disclose any interest in the Town Car, the Seville, the Colorado, the Fleetwood, or the 2013 Ram 1500.   In the alternative, Mr. Kroger failed to disclose on the statement of financial affairs that he either held

or controlled the vehicles and that the vehicles were owned by Phyllis Kroger and the

Vallers View Trust.   Also in the alternative, Mr. Kroger failed to disclose that he

transferred the Fleetwood or the funds to purchase the Fleetwood to Phyllis Kroger

within the two years prior to his bankruptcy filing.

60.     On schedule A/B, Mr. Kroger failed to disclose a 2020 Arising trailer and a

2019 HH trailer.   In the alternative, Mr. Kroger failed to disclose on the statement of

financial affairs that he either held or controlled the trailers and that the trailers were

owned by Phyllis Kroger.

61.     On schedule A/B, Mr. Kroger failed to disclose the leased Personal Property.

In the alternative, Mr. Kroger failed to disclose on the statement of financial affairs

that he either held or controlled the leased Personal Property, and that the leased

Personal Property was owned by Phyllis Kroger.   Also in the alternative, Mr. Kroger

failed to disclose that he transferred the leased Personal Property to Phyllis Kroger

within the two years prior to his bankruptcy filing.

62.     On schedule A/B, Mr. Kroger falsely stated that he had only $162.00 in cash.

Within one month of filing his bankruptcy petition, Mr. Kroger deposited $5,651.37

in cash into his Minnwest bank account.   On schedule I, Mr. Kroger represented that

he had no income.

63.     On schedule A/B, Mr. Kroger failed to disclose his SunTrust bank account.

In the alternative, Mr. Kroger failed to disclose the closure of his SunTrust bank

account on the statement of financial affairs.

64.     On schedule A/B, Mr. Kroger failed to disclose his TD Ameritrade account.

In the alternative, Mr. Kroger failed to disclose the closure of his TD Ameritrade

account on the statement of financial affairs.

65.     On schedule A/B, Mr. Kroger failed to disclose an HSBC bank account.   In

the alternative, Mr. Kroger failed to disclose the closure of his HSBC account on the

statement of financial affairs.

66.     On schedule A/B, Mr. Kroger failed to disclose a USAA bank account.   In the

alternative, Mr. Kroger failed to disclose the closure of his USAA account on the

statement of financial affairs.

67.     On schedule A/B, Mr. Kroger failed to disclose a PayPal account.   In the

alternative, Mr. Kroger failed to disclose the closure of his PayPal account on the

statement of financial affairs.

68.     On June 9, 2022, Mr. Kroger deposited two checks totaling $6,350.31 into his

Minnwest bank account.   Mr. Kroger failed to disclose the checks on schedule A/B.

69.     On schedule A/B, Mr. Kroger failed to disclose his interest in the Vallers View

Irrevocable Trust.

70.     On schedule G, Mr. Kroger falsely stated that he was not a party to any leases

18

or executory contracts.

71.     On schedule J, Mr. Kroger falsely stated that he was paying $100.00 a month in property taxes.

72.     On schedule J, Mr. Kroger falsely stated that he was paying $200.00 a month in "Property, homeowner's, or renter's insurance."

73.     On schedule J, Mr. Kroger falsely stated that he did not have any car payments.

74.     On the statement of financial affairs, Mr. Kroger falsely stated that he had no income in 2022.   In the alternative, Mr. Kroger falsely stated on the statement of financial affairs that he did not sell, trade, or otherwise transfer any property to anyone outside of the ordinary course of business in the two years before he filed his bankruptcy case.

75.     On the statement of financial affairs, Mr. Kroger falsely stated that his only income in 2021 was $5,457.00 in interest and $37,440.00 in unemployment income.

76.     On the statement of financial affairs, Mr. Kroger failed to disclose the transfer of his life insurance policies to Phyllis Kroger.

77.     On the statement of financial affairs, Mr. Kroger failed to disclose the sale of at least $186,225.00 in precious metals in the two years prior to his bankruptcy filing.

**<u>False Testimony at Meeting of Creditors</u>**

78.     Mr. Dietz convened the meeting of creditors on July 6, 2022.   At the meeting

19

of creditors, Mr. Kroger testified falsely as follows:

a.      That the information in his bankruptcy filing was true and correct;

b.      That he listed all of his assets on his bankruptcy schedules;

c.      That he did not have a stock ownership account;

d.      That he had never purchased a vehicle and had it titled in the name of

another person;

e.      That he had never titled a vehicle in his mother's name.

### COUNT I
### CONCEALMENT OF PROPERTY OF THE DEBTOR WITH INTENT TO HINDER, DELAY, OR DEFRAUD A CREDITOR WITHIN ONE YEAR OF THE DATE OF THE FILING OF THE PETITION

79.      The plaintiff re-alleges Paragraphs 1-78 as if fully set forth herein.

80.      Mr. Kroger filed a voluntary chapter 7 petition on June 8, 2022.

81.      Mr. Kroger concealed his interest in the Personal Property, the Town Car, the

Seville, and the Fleetwood with the intent to hinder, delay, or defraud his creditors

within one year prior to the date of his bankruptcy petition.

82.      Mr. Kroger engaged in continuing concealment of the funds that he

characterizes as "loan proceeds" with the intent to hinder, delay, or defraud his

creditors within one year prior to the date of his bankruptcy petition.   This includes,

but is not limited to, Mr. Kroger's drafting of falsified promissory notes in June of

2022, his purchase and sale of precious metals using the "loan proceeds", and his

transfer of the two remaining Texas properties in August of 2021.

83.    As a result of Mr. Kroger's conduct, the plaintiff is entitled to an order denying

his discharge under 11 U.S.C. § 727(a)(2)(A).

COUNT II
CONCEALMENT OF PROPERTY OF THE ESTATE WITH INTENT TO
HINDER, DELAY, OR DEFRAUD THE CHAPTER 7 TRUSTEE AFTER THE
DATE OF THE FILING OF THE PETITION

84.    The plaintiff re-alleges Paragraphs 1-83 as if fully set forth herein.

85.    Mr. Kroger filed a voluntary chapter 7 petition on June 8, 2022.

86.    Mr. Kroger concealed his interest in the Personal Property, the Town Car, the

Seville, the Colorado, the Fleetwood, a 2013 Ram 1500, a 2019 HH 6 trailer, and a

2020 Arising trailer with the intent to hinder, delay, or defraud the chapter 7 trustee

after the filing of his bankruptcy petition.

87.    Mr. Kroger concealed $5,651.37 in cash and checks totaling $6,530.31 with the

intent to hinder, delay, or defraud the chapter 7 trustee after the filing of his

bankruptcy petition.

88.    The concealed property was property of the bankruptcy estate.

89.    As a result of Mr. Kroger's conduct, the plaintiff is entitled to an order denying

his discharge under 11 U.S.C. § 727(a)(2)(B).

21

## COUNT III
## FAILURE TO KEEP ADEQUATE RECORDS

90.    The plaintiff re-alleges Paragraphs 1-89 as if fully set forth herein.

91.    Mr. Kroger failed to keep or preserve recorded information from which his

financial condition and business transactions might be ascertained.

92.    Mr. Kroger's failure to keep or preserve such recorded information is not

justified under all of the circumstances of the case.

93.    As a result of Mr. Kroger's conduct, the plaintiff is entitled to an order denying

Mr. Kroger's discharge under 11 U.S.C. § 727(a)(3).

## COUNT IV
## FALSIFICATION OF RECORDS

94.    The plaintiff re-alleges Paragraphs 1-93 as if fully set forth herein.

95.    Mr. Kroger falsified recorded information from which his financial condition

and business transactions might be ascertained, namely the promissory notes that he

purportedly signed on June 1, 2022.

96.    Mr. Kroger's falsification of such recorded information is not justified under

allof the circumstances of the case.

97.    As a result of Mr. Kroger's conduct, the plaintiff is entitled to an order denying

Mr. Kroger's discharge under 11 U.S.C. § 727(a)(3).

## COUNT V
### FALSE OATHS IN OR IN CONNECTION WITH THE CASE

98.   The plaintiff re-alleges Paragraphs 1-97 as if fully set forth herein.

99.   Mr. Kroger knowingly and fraudulently made the false oaths set forth in

Paragraphs 58 through 77 of this Complaint.

100.   The false oaths set forth above were material omissions regarding Mr. Kroger's

property, property of the estate, or Mr. Kroger's financial transactions.

101.   As a result of Mr. Kroger's false oaths, the plaintiff is entitled to an order

denying his discharge under 11 U.S.C. § 727(a)(4)(A).

## COUNT VI
### FAILURE TO ACCOUNT FOR LOSS OF ASSETS

102.   The plaintiff re-alleges Paragraphs 1-101 as if fully set forth herein.

103.   Mr. Kroger has not provided a satisfactory explanation for the disposition or

loss of $198,355.39 of precious metals that he acquired between November 13, 2019

and August 23, 2021.

104.   Mr. Kroger has not provided a satisfactory explanation for the disposition or

loss of eight additional American Gold Buffalo coins purchased on an unspecified

date, with an approximate value of $2,000.00 each.

105.    Mr. Kroger has not provided a satisfactory explanation for the disposition or

loss of $156,650.81 in cash withdrawn from his Wells Fargo bank account between

May 12, 2020 and December 15, 2021.

106.    Mr. Kroger has not provided a satisfactory explanation for the disposition or loss of four insurance policies that appear to be life insurance policies.

107.    Mr. Kroger has not provided a satisfactory explanation for the disposition or loss of $250,000 that he claims are gambling losses in Las Vegas in the year prior to the date of his bankruptcy petition.

108.    Mr. Kroger has not provided a satisfactory explanation for the disposition or loss of PPP loan proceeds obtained on:

    a.    May 4, 2020 in the amount of $20,800.00.

    b.    May 20, 2020 in the amount of $20,832.00.

    c.    February 10, 2021 in the amount of $20,833.00.

109.    As a result of Mr. Kroger's conduct, the plaintiff is entitled to an order denying Mr. Kroger's discharge under 11 U.S.C. § 727(a)(5).

*—Remainder of page intentionally blank—*

WHEREFORE, the plaintiff requests that this Court enter an order and

judgment denying Mr. Kroger's discharge under 11 U.S.C. § 727(a)(2)(a), (a)(2)(B),

(a)(3), (a)(4)(A), and (a)(5) together with such other and further relief as the Court

deems just and equitable.

Dated: January 26, 2023                    MARY R. JENSEN
                                           ACTING UNITED STATES TRUSTEE
                                           REGION 12

                               BY:    /e/ Colin Kreuziger
                                      Colin Kreuziger
                                      MN Attorney No. 0386834
                                      Trial Attorney
                                      United States Department of Justice
                                      1015 U.S. Courthouse
                                      300 South Fourth Street
                                      Minneapolis, MN 55415
                                      (612) 334-1350
                                      Colin.Kreuziger@usdoj.gov

# VERIFICATION

I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on January 26, 2023

/e/ Colin Kreuziger
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350